UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AMERICAN BUILDERS & CONTRACTORS
SUPPLY CO., INC. d/b/a ABC SUPPLY CO., INC.,

                              Plaintiff,                    DECISION AND ORDER

vs.

                                                              21-CV-6433 (CJS)

MACALUSO ENTERPRISES, LTD.
DAN C. FULMER, INC., DAN FULMER CORP.,
DAN FULMER CONSTRUCTION, INC. d/b/a
DAN FULMER COMPANY, and JAMES A. LA RUEZ,

                              Defendants.

_____

       Plaintiff American Builders & Contractors Supply, Co. Inc. ("ABC") filed this action against Defendants Macaluso Enterprises, Ltd., Dan C. Fulmer, Inc., Dan Fulmer Corp., Dan Fulmer Construction, Inc. d/b/a Dan Fulmer Company, and James A. LaRuez (collectively "Defendants") for, among other things, breach of contract and fraudulent inducement. Compl., June 7, 2021, ECF No. 1. The matter is presently before the Court on Defendants' motion to dismiss ABC's complaint for failure to state a claim upon which relief may be granted. Mot. to Dismiss, July 6, 2021, ECF No. 10. For the reasons stated below, Defendants' motion [ECF No. 10] is denied.

       In addition, the Court *sua sponte* orders the consolidation of this case with 20-CV-6099. ABC is directed to file a consolidated amended complaint in case number 20-CV-6099 no later than 30 days from the date of this order. Defendants are directed to file an answer or otherwise respond to the consolidated amended complaint no later than 30 days thereafter. The Clerk of Court is directed to administratively close case number 21-CV-6433.

LEGAL STANDARD

At the outset, the Court notes that the purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is to test . . . the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted). An action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citation and internal quotation marks omitted).

BACKGROUND

The following facts are taken primarily from ABC's complaint, which the Court accepts as true for the purpose of ruling on the motion to dismiss. *See Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (citation omitted). ABC succinctly summarizes the relevant background of its action as follows:

> 1. This is an action for damages arising out of [Defendant James] La Ruez's operation of interrelated companies that were used to defeat the rights of his companies' creditors, including ABC.
>
> 2. In the 1990s, an entity named "Dan C. Fulmer Co." entered in a credit agreement with ABC. No such entity has ever existed. Instead, La Ruez has owned and operated (at least) four different entities while running the same construction business. These were used to transfer assets and defeat creditors' rights.
>
> 3. ABC previously initiated an action [the "prior Action"] against La Ruez and Dan C. Fulmer, Inc., Dan Fulmer Corp., Dan Fulmer Construction, Inc. It did so because it believed it had unwittingly provided $361,311.23 in goods (the "Goods") to Dan C. Fulmer Inc., Dan Fulmer Corp., or Dan Fulmer Construction, Inc., for which ABC has not been paid.
>
> 4. In La Ruez's deposition in the [prior] Action, he testified that all of the Goods were received and used by Macaluso in construction projects. He further testified that he did not tell ABC about how he closed those other entities, and opened Macaluso [Enterprises] in 2017, because he wanted to continue to receive the credit ABC had extended to "Dan C. Fulmer Co." As a result, due to La Ruez's deception, ABC may have unwittingly provided Macaluso [Enterprises] with the Goods.

Compl. at ¶ 1–4.

Based on ABC's discovery of Defendant Macaluso Enterprises during Defendant LaRuez's deposition in the prior Action,[1] ABC initiated the present action. ABC seeks damages of no less than $361,311.23 plus interest, late charges, and attorneys' fees on claims of breach of contract, action for the price, account stated, and restitution/quasi-contract against all Defendants, alleging specifically that:

---

[1] For the purposes of this decision, the "prior Action" refers to *American Builders & Contractors Supply Co., Inc. v. Dan C. Fulmer, Inc. et al*, No. 20-CV-6099 (W.D.N.Y.).

> . . . La Ruez is personally liable for the Defendants' debt for the Goods, as the *alter ego[ ]* of the Defendants, including Macaluso [Enterprises] and Dan C. Fulmer, Inc.
>
> . . . La Ruez operated Dan C. Fulmer, Inc., Dan Fulmer Corp., and Dan Fulmer Construction, Inc., as part of a single enterprise with Macaluso [Enterprises] and, as such, they are also liable for the Goods, as the *alter egos* of Macaluso and Dan C. Fulmer, Inc.

Compl. at ¶ 157–58. In addition, ABC claims fraudulent transfer, common law fraudulent conveyance, and fraudulent inducement against Defendant LaRuez and the corporate Defendants. Compl. at ¶ 180–239.

## DISCUSSION

In the instant motion, Defendants claim that this action should be dismissed because: (1) ABC's claims of breach of contract, action for the price, account stated, and restitution/quasi-contract are merely duplicative of the claims ABC filed in the prior Action; (2) ABC's fraudulent transfer cause of action fails to state a claim under N.Y. Debt. & Cred. L. § 273; and (3) ABC's claims for fraudulent transfer, common law fraudulent conveyance, and fraudulent inducement are improper attempts to circumvent Fed. R. Civ. P. 15. Def. Mem. of Law, Jul. 6, 2021, ECF No. 10-1.

<u>Defendants have not shown that Counts I through IV in this action should be dismissed</u>.

Defendants maintain that Counts I through IV in this action – for breach of contract, action on the price, account stated, and quasi-contract – must be dismissed because they are duplicative of ABC's claims in the prior Action. Def. Mem. of Law at 2–4. Defendants assert that Counts I through IV are identical to the claims in the prior Action as against Defendants LaRuez, Dan Fulmer Corp., Dan Fulmer Construction, Inc., and Dan C. Fulmer Inc., and that the claim against Macaluso Enterprises is barred because Macaluso

Enterprises is in privity with the other Defendants. Def. Mem. of Law at 4.

ABC argues, however, that the Defendants fail to carry their burden of demonstrating that the claims should be dismissed. Specifically, ABC states that the claims in the two suits are fundamentally different because the first four claims in the instant action "seek to impose alter ego liability against the defendants Dan C. Fulmer, Inc., Dan Fulmer Corp., Dan Fulmer Construction, Inc., and Macaluso Enterprises, Ltd., based on their symbiotic relationships and operation of a single business enterprise." Pl. Mem. of Law, 6, Aug. 6, 2021, ECF No. 15. The Court agrees with ABC that Defendants have not shown that ABC's case must be dismissed.

*Legal Principles*

As part of its general power to administer its docket, and in the interest of fostering judicial economy and protecting parties from "the vexation of concurrent litigation over the same subject matter," the district court may stay or dismiss a suit that is duplicative of another federal court suit. *Curtis v. Citibank*, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (citing, *inter alia*, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "This is because a plaintiff has no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (internal quotation omitted). This precept is known as "the rule against duplicative litigation." *Id*.

Alternatively, "[a] district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) *sua sponte*." *Devlin v. Transportation Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). "Rule 42(a) provides that consolidation is acceptable '[w]hen

actions involving a common question of law or fact are pending before the court.'" *Devlin v. Transportation Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). The decision regarding whether to stay, dismiss, consolidate, or allow potentially duplicative litigation "is one for the exercise of the district court's discretion in the comprehensive management of litigation in its court." *Curtis*, 226 F.3d at 139. In assessing the appropriate course of action, "a district court should consider both equity and judicial economy . . . . [mindful that] efficiency cannot be permitted to prevail at the expense of justice . . . ." *Devlin*, 175 F.3d at 130.

*Application*

The Court finds the present case distinguishable from the cases that Defendants cite in support of their motion to dismiss. Unlike the cited cases, Defendants here have failed to demonstrate that ABC's claims should be dismissed.

For instance, the Court declines to adopt Defendants' position that the analysis of this case "is no different" than that of the Eastern District of New York in *Liu v. Chan*, 20-CV-5651-KAM-SJB, 2021 WL 2281636 (E.D.N.Y., May 12, 2021). In *Liu*, plaintiffs filed an action containing several wage and labor law claims against their employer in September 2018, amended their complaint once as a matter of right, and then amended their complaint again in February 2019 after agreeing to drop minimum wage claims after a preliminary hearing before the court. *Id.* at *1. After the court's Rule 16 scheduling conference, the deadline to amend was set for April 9, 2019. *Id.* at *2. In February 2020 the district court dismissed several claims from the complaint, and plaintiffs filed a third amended complaint the following month without either leave of court or consent of the

parties. *Id.* at *2. Plaintiffs agreed to withdraw their third amended complaint, but, in November 2020, filed a second action in which "the first eight causes of action in the *Lui II* Complaint are the same as those in the operative *Lui I* Complaint, with the only additional exception being the additional NYLL unpaid wages claim. *Lui II* also adds one defendant . . . ." *Id.* at *2. The magistrate judge in the second action concluded that it was "an improper end run around the deadlines in *Liu I*," and recommended that the second action be dismissed rather than stayed or consolidated because, "[c]onsolidation would improperly reward Plaintiffs' gamesmanship." *Id.* at *6–7.

Three particular differences between *Liu* and this case strike the Court as significant. First, ABC here alleges that the key facts at the basis of the instant action – namely, the very existence of Macaluso Enterprises as LaRuez's primary business operation since 2017 – were not discovered until the closing days of discovery in the prior action in March 2021, well beyond the September 1, 2020 deadline set by the magistrate to join parties or amend the complaint. *See, e.g., Compl.* at ¶ 182, ¶ 184, ¶ 192. Second, the claims in the present action are not precisely the same as those in the prior Action. Here, ABC expressly adds the facts discovered in March 2021 and an alter ego theory in order to "pierce the corporate veil" of the corporate defendants, as well as three additional and distinct claims. Third, unlike *Liu*, in which plaintiffs were attempting to circumvent an adverse ruling dismissing many of their claims,[2] here the deadline for dispositive motions

---

[2] In this respect, the present case is also unlike the case from the Southern District of New York that Defendants rely upon in their reply brief, *Branded Apparel Grp. LLC v. Muthart*, No. 17 CIV. 5956 (PAE), 2018 WL 4308545 (S.D.N.Y. Sept. 10, 2018). The district court in *Branded* unequivocally found that the plaintiff in the second action "deliberately sought to circumvent [the court]'s scheduling order by filing a state-court action against [the defendant]." *Id.* at *4. Moreover, *Branded* may be further distinguished because the plaintiff's intent in the second *Branded* action was to add an individual defendant as potentially personally liable for his activity purportedly on behalf of a corporation, while in the present case ABC had

7

in the prior action had not yet passed when ABC filed its complaint, the defendants in the prior action had not yet filed their partial motion for summary judgment, and there had been no adverse ruling against ABC that required circumvention.

Accordingly, after considering the equities of the situation, including the cost to the parties of additional discovery, delay of a final resolution in either action, and the potential recovery of over $360,000, the Court concludes that the more appropriate course is to consolidate the two actions, rather than to dismiss or stay the present action. *See Devlin*, 175 F.3d at 130.

<u>Defendants have not shown that ABC failed to state a fraudulent transfer claim</u>.

Defendants also maintain that Count V of the subject complaint for fraudulent transfer fails to state a claim under New York law[3] because the transfers allegedly took effect before 2019, when Defendants ordered the goods from ABC for which they have allegedly failed to pay, and N.Y. Debt. & Cred. L. § 273-a "makes no provision for those who become creditors subsequent to a fraudulent transfer." Def. Mem. of Law at 10 (quoting *Standard Chartered Bank v. Kittay*, 215 A.D.2d 645, 646 (N.Y. App. Div. 1995)).

---

already named LaRuez as an individual in the prior Action and sought merely to add a further corporate defendant allegedly controlled by LaRuez, the existence of which ABC was unaware until toward the close of discovery. *Id.* at *5. The plaintiff in the second action that Defendants rely upon, *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 19CV04894DRHARL, 2020 WL 5709180 (E.D.N.Y. Sept. 24, 2020), similarly involved a plaintiff's attempt to evade a judge's order. *Id.* at *2 (explaining that the plaintiff filed the second action only after the judge had denied plaintiff's letter application for leave to amend the complaint in the first action).

[3] As the Court noted in the prior Action, "both sides address ABC Supply's claims under New York law, without reference to any applicable choice of law issues. Therefore, the Court finds implied agreement that New York law applies in this case. *See, e.g., Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law.") (internal quotation marks and citation omitted)." *Am. Builders & Contractors Supply Co. v. Dan C. Fulmer, Inc.,* No. 20-CV-6099 (CJS), 2022 WL 597461, at *2 (W.D.N.Y. Feb. 28, 2022).

ABC counters, however, that its claims are not based on N.Y. Debt. & Cred. L. § 273-a, but rather on N.Y. Debt. & Cred. L. § 275, § 276, and § 276-a, all of which permit actions by a future creditor. Pl. Mem. of Law at 11–12. The Court finds that Defendants have not met their burden to establish that ABC has failed to state a claim for fraudulent transfer.

*Legal Principles*

Another court in this district has concisely summarized the applicable New York law regarding claims of fraudulent transfer as it was until amended in April 2020:

> Article 10 of the New York Debtor and Creditor Law provides that certain types of conveyances are deemed fraudulent as to creditors, and are subject to being set aside. In order to state a claim for fraudulent conveyance under these provisions, a plaintiff must allege that the conveyance was made without fair consideration and that: (1) the transferor is insolvent at the time of the conveyance or will be rendered insolvent by the transfer (Debt. & Cred. L. § 273[-a]); (2) as a result of the transfer, the transferor is left with unreasonably small capital to conduct its business (Debt. & Cred. L. § 274); or (3) as a result of the transfer, the transferor intends or believes that it will incur debt beyond its ability to pay (Debt. & Cred. L. § 275). In addition, "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors," irrespective of whether fair consideration was paid. Debt. & Cred. L. § 276.

*Eastman Kodak Co. v. Camarata*, No. 05 CV 6384L, 2006 WL 3538944, at *16–17 (W.D.N.Y. Dec. 6, 2006).

In April 2020, Article 10 of the New York Debtor and Creditor law was amended, and § 273 now provides that:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor;

or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.Y. Debt. & Cred. L. § 273.

Consequently, any claim brought under § 273 of the new Debtor and Creditor Law can be pursued by either a plaintiff whose claim[4] existed at the time of the challenged transfer, or a plaintiff whose claim arose afterward. *See, e.g.,* 4F N.Y. Prac., Com. Litig. in New York State Courts, § 129:18 (5th ed.) (entitled "§ 129:18. Who can pursue a claim: Present and future creditors"). Additionally, New York courts have concluded that the versions of N.Y. Debt & Cred. L. § 275 and § 276 in effect prior to the April 2020 amendments also provided for claims by both present and future creditors. *See, e.g., Shelly v. Doe*, 249 A.D.2d 756, 758 (N.Y. App. Div. 1998) (allowing a creditor on a 1997 judgment to pursue a fraudulent transfer claim for a transfer that occurred in 1991). Where a claimant does not have direct proof of actual intent for the fraudulent transfer, he or she may establish an inference of fraudulent intent by reference to such "badges of fraud" as: "(1) a close relationship between the parties to the transaction, (2) a secret and hasty

---

[4] N.Y. Debt. & Cred. L. § 270 defines claim broadly. "Claim . . . means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Further, a "creditor" is simply "a person that has a claim." N.Y. Debt. & Cred. Law § 270(c) and (d).

10

transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance." *Shelly*, 249 A.D.2d at 758 (citing *MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 934 (S.D.N.Y 1995)).

*Application*

Notwithstanding Defendants' claims to the contrary, ABC's complaint includes sufficient allegations for a colorable fraudulent transfer claim. As the district court stressed in the *Eastman Kodak v. Camarata* case cited above, a motion to dismiss is addressed only to the sufficiency of the pleading, and not the strength of plaintiffs' claims. *Eastman Kodak Co.*, 2006 WL 3538944 at *2. As such, the test is merely "whether there is any set of facts that could, if proven, support plaintiffs' claim or claims." *Id.*

In the present case, ABC alleges several asset transfers between Defendants during the period from 2012 until the time of the complaint in which the transferor did not receive reasonably equivalent value, that left the transferor either insolvent or nearly so, and that were made with the intent to hinder or delay creditors. Specifically, ABC alleges:

> 181. At the direction of La Ruez, Dan C. Fulmer, Inc. made asset transfers worth more than about $300,000 to La Ruez, which included the real property at 98 Avis Street, Rochester, New York, and 1600 Dewey Avenue, Rochester, New York . . . (collectively, the "Fulmer Real Properties"), as well as the entire vehicle fleet used by Dan C. Fulmer, Inc., which consisted of at least twelve vehicles (collectively, the "Fulmer Vehicles"), with the actual intent to hinder, delay, or defraud Dan C. Fulmer, Inc.'s creditors (the "Real Property and Vehicle Transfers").
>
> * * *

183. At the direction of La Ruez, Dan C. Fulmer, Inc. transferred all of its remaining assets, other than the Fulmer Real Properties and the Fulmer Vehicles, including customer lists, furniture, records, and other tangible assets, to Dan Fulmer Corp., with the actual intent to hinder, delay, or defraud Dan C. Fulmer, Inc.'s creditors (the "Fulmer Inc. Office Transfers").

* * *

185. Dan C. Fulmer, Inc. did not receive reasonably equivalent value in exchange for the Real Property and Vehicle Transfers, and was insolvent when they were made or became insolvent as a result.

186. Dan C. Fulmer, Inc. did not receive reasonably equivalent value in exchange for the Fulmer Inc. Office Transfers, and was insolvent when they were made or became insolvent as a result.

187. At the time of the Real Property and Vehicle Transfers, as well as the Fulmer Inc. Office Transfers, Dan C. Fulmer, Inc. was unable to pay its bills as they became due and faced significant legal exposure from pending legal actions against it.

188. As a result of the Real Property and Vehicle Transfers, as well as the Fulmer Inc. Office Transfers, the remaining assets of Dan C. Fulmer, Inc. were unreasonably small in relation to any business it continued, including with ABC.

189. The transferees did not receive the Real Property and Vehicle Transfers or the Fulmer Inc. Office Transfers in good faith and did not provide reasonably equivalent value in exchange for them.

190. La Ruez is the person for whose benefit the Real Property and Vehicle Transfers and Fulmer Inc. Office Transfers were made.

191. Additionally, at the direction of La Ruez, Dan Fulmer Corp. transferred all its assets, including the assets it received through the Fulmer Inc. Office Transfers, including customer lists and other tangible assets, to Dan Fulmer Construction, Inc., with the actual intent to hinder, delay, or defraud Dan Fulmer Corp.'s creditors (the "Fulmer Corp. Office Transfers").

* * *

193. Dan Fulmer Corp. did not receive reasonably equivalent value in exchange for the Fulmer Corp. Office Transfers, and was insolvent when

they were made or became insolvent as a result.

\* \* \*

198. Further, at the direction of La Ruez, Dan Fulmer Construction, Inc. transferred all its assets, including the assets it received through the Fulmer Corp. Office Transfers, including customer lists and other tangible assets, to Macaluso, with the actual intent to hinder, delay, or defraud Dan Fulmer Construction, Inc.'s creditors (the "Fulmer Construction Office Transfers").

\* \* \*

200. Dan Fulmer Construction, Inc. did not receive reasonably equivalent value in exchange for the Fulmer Construction Office Transfers, and was insolvent when they were made or became insolvent as a result.

201. At the time of the Fulmer Construction Office Transfers, Dan Fulmer Construction, Inc. was unable to pay its bills as they became due and owed an outstanding balance to ABC for goods ABC unknowingly provided to it.

202. As a result of the Fulmer Construction Office Transfers, the assets of Dan Fulmer Construction, Inc. were unreasonably small in relation to any business it continued, including with ABC.

203. The transferees did not receive the Fulmer Construction Office Transfers in good faith and did not provide reasonably equivalent value in exchange for them.

Compl. ¶ 180—206. *See also* Compl. at ¶ 67–112 (amplifying the factual basis relevant to the fraudulent transfer claim).

In addition to the transfers of assets from Defendant Dan C. Fulmer, Inc. to LaRuez (Compl. at ¶ 181), from Dan C. Fulmer, Inc. to Dan Fulmer Corp. (Compl. at ¶ 183), from Dan Fulmer Corp. to Dan Fulmer Construction, Inc. (Compl. at ¶ 191), and from Dan Fulmer Construction, Inc. to Macaluso Enterprises (Compl. at ¶ 198), ABC also alleges ongoing lease and rental payments that potentially meet the criteria of fraudulent transfers, as well. For example, ABC states that Dan C. Fulmer, Inc. entered into a

13

property lease agreement with Dan Fulmer Construction for payments of $1,500 to $2,000 each month, all of which were transferred to LaRuez personally. Compl. at ¶ 80–82. ABC also states that Dan C. Fulmer, Inc. entered into a vehicle lease with Dan Fulmer Construction, Inc. for payments of $4,000 to $5,000 each month, all of which have been transferred to LaRuez personally. Compl. at ¶ 89–91.

The complaint identifies key details for each of the transactions in question, and read as a whole alleges enough "badges of fraud" to support an inference of fraudulent intent. *See, e.g.*, Compl. at ¶ 28 (quoting alleged deposition testimony by LaRuez that opening Dan Fulmer Corp. "solved" the "problem" created by a worker's compensation lawsuit). Accordingly, the Court finds that Defendants have failed to meet their burden to show that ABC has failed to state a fraudulent claim under N.Y. Debt. & Cred. L. § 273, § 275, and § 276.

<u>The present action is not an improper attempt to circumvent Fed. R. Civ. P. 15</u>.

Finally, Defendants argue that the fraudulent transfer, fraudulent conveyance, and fraudulent inducement counts of ABC's complaint must be dismissed as "gamesmanship . . . intended to bleed the already struggling Defendants dry . . . ." Def. Mem. of Law at 8. Defendants state that ABC has had the information upon which the allegations are based since September 2020, and that the present action is merely an attempt to circumvent Rule 15 in the prior Action. Def. Mem. of Law at 7. ABC counters that the claims in question cannot violate Rule 15 in the prior action because they are entirely distinct from the breach of contract and U.C.C. claims in the prior Action, and that Defendants' statement that ABC has had the underlying information on their claims since September

2020 is "misleading." Pl. Mem. of Law at 18–19.

The Court agrees with ABC that Defendants have failed to show that the claims in the present complaint are improper attempts at an end run around Fed. R. Civ. P. 15. While a motion to amend in the prior Action may have been procedurally more sensible, Defendants present no evidence of gamesmanship on the part of ABC. Rather, the record seems to indicate a factual discovery following the expiration of the deadline for joining and amending parties in the prior Action, and ABC's subsequent attempts to save its claims from an impending expiration of the relevant statutes of limitation.

## CONSOLIDATION

As indicated above, Rule 42(a) of the Federal Rules of Civil Procedure authorizes district courts to consolidate "actions before the court that involve a common question of law or fact. . . ." *Hall v. Hall*, 138 S. Ct. 1118, 1124 (2018) (quoting Fed. Rule Civ. Proc. 42(a)(2)). Indeed, "[a] district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) *sua sponte*." *Devlin*, 175 F.3d at 130. In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy. *See Miller*, 729 F.2d at 1037.

Although the claims in the two actions are distinct, the present case and the prior Action undoubtedly share common questions of law or fact. Further, because both actions are before the same district court judge, considerations of judicial economy weigh heavily in favor of consolidation. Lastly, having concluded that Defendants' motion to dismiss the instant complaint are without merit, the interests of justice would also be served by a single, thorough investigation into the circumstances of the case. Therefore, the Court

finds that the present action should be consolidated with the earlier case of *American Builders & Contractors Supply Co., Inc. v. Dan C. Fulmer, Inc.et al*, No. 20-CV-6099.

## CONCLUSION

For the foregoing reasons, it is hereby,

ORDERED that Defendants' motion to dismiss [ECF No. 10] is denied; and it is further

ORDERED that pursuant to Fed. R. Civ. P. 42, the present action be consolidated with *American Builders & Contractors Supply Co., Inc. v. Dan C. Fulmer, Inc. et al*, No. 20-CV-6099. The lead case shall be the low-numbered *Dan C. Fulmer, Inc.* action, and this action will be administratively closed. And it is further

ORDERED that ABC shall file a Consolidated Amended Complaint, which shall include all of their claims against the named Defendants in the two actions, no later than 30 days from the date of this decision and order; and it is further

ORDERED that Defendant shall file an Answer or otherwise respond to the Consolidated Amended Complaint within 30 days after ABC files their Consolidated Amended Complaint.

SO ORDERED.

Dated:   April 12, 2022
         Rochester, New York

                                                    ENTER:

                                                    *[signature: Charles J. Siragusa]*
                                                    CHARLES J. SIRAGUSA
                                                    United States District Judge